(78 South. 596)

No. 22434.

BOYER v. CRESCENT PAPER BOX FACTORY, Inc.

(Nov. 26, 1917. On Rehearing, April 29, 1918.)

*(Syllabus by Editorial Staff.)*

1. MASTER AND SERVANT &#9758;359 — EMPLOYERS' LIABILITY ACT—APPLICATION—NOTICE.

Employers' Liability Act (Act No. 20 of 1914) § 3, par. 3, providing that parties to the contracts of employment covered by the act shall be presumed to have intended to be subject to its provisions, unless otherwise stipulated in the contract, or unless either party gives the other notice to the contrary not less than 30 days prior to the accident, applies where an injured employé gave notice only after the accident, but within 30 days of the date of employment.

2. MASTER AND SERVANT &#9758;393½—EMPLOYERS' LIABILITY ACT—APPLICATION.

Where an employer fully complied with the medical aid requirements of the Employers' Liability Act (Act No. 20 of 1914), § 8, par. 5, during the first two weeks after the injury, it was not estopped from invoking the benefits of the act.

3. MASTER AND SERVANT ⟺398—EMPLOYERS' LIABILITY ACT—NOTICES.

The only function of Employers' Liability Act (Act No. 20 of 1914) § 12, relating to the posting of notices as to the time for notice of injury, and as to effect of failure to post notices, is to stay the running of the 15 days allowed for notice of injury, and the only consequences of a failure to post such notices is that the employé, under section 11, has 6 months instead of 15 days within which to give notice.

4. MASTER AND SERVANT ⟺347—EMPLOYERS' LIABILITY ACT—CONSTITUTIONALITY.

The Employers' Liability Act (Act No. 20 of 1914) is not invalid as making the employé, without his consent, a party in a contract entered into by the employer with an insurance company, as the employé is not made a party to such contract, but is merely given a right of action thereon for his additional security, and as under the express provision of section 41 the nullity of such provision would not entail the nullity of the entire act.

5. MASTER AND SERVANT ⟺347—EMPLOYERS' LIABILITY ACT.

Employers' Liability Act (Act No. 20 of 1914) § 3, par. 3, providing that every contract of the kind covered by the act is presumed to have been intended to come thereunder, unless express provision is made to the contrary in the contract, or a notice of a contrary intention is given by the employé to the employer 30 days before the accident, is not beyond the legislative authority as a prescription established in the interest of foreign insurance companies, as the function of the notice is not to cut off a right of action by prescription, but to take the employment contract from under the operation of the act.

6. MASTER AND SERVANT ⟺347—EMPLOYERS' LIABILITY ACT—RIGHT OF ACTION—NOTICE.

The power of the Legislature to provide, as in Employers' Liability Act (Act No. 20 of 1914) § 3, par. 3, that an employé in a factory shall have no right of action for personal injury in the course of his employment, unless he gives the employer notice of the injury within reasonable time after its occurrence, cannot be doubted.

7. STATUTES ⟺114(2)—SUBJECT AND TITLE—CONSTITUTIONAL PROVISIONS.

The Employers' Liability Act (Act No. 20 of 1914), prescribing employers' liability for injuries to employés, the compensation and procedure, etc., expresses the object in its title, to which object everything contained in the act is germane, and hence is not unconstitutional because containing more than one object, and because several objects contained therein are not expressed in its title.

8. MASTER AND SERVANT ⟺347—EMPLOYERS' LIABILITY ACT—RIGHTS OF ACTION — CONSTITUTIONALITY.

Employers' Liability Act (Act No. 20 of 1914) is not unconstitutional because taking away an employé's right of action under the general law of torts.

Monroe, C. J., dissenting.

### On Rehearing.

*(Syllabus by the Court.)*

9. MASTER AND SERVANT ⟺385(11)—EMPLOYERS' LIABILITY ACT—CONSTRUCTION.

Act No. 20 of 1914, p. 44, known as the Employers' Liability Act, or Compensation Act, does not provide for serious permanent injuries which result in disfigurement about the face or head, or to the destruction of the usefulness or the impairment of a member or any physical function of the body.

10. AMENDMENT TO EMPLOYERS' LIABILITY ACT.

The said act has been amended so as to cover such cases by Act No. 243 of 1916, p. 512.

11. MASTER AND SERVANT ⟺349—PERSONAL INJURY—RECOVERY OF DAMAGES—INJURY TO SCALP.

The scalping of an employé, which occurred while performing services arising out of and incidental to his employment in the course of his employer's business, prior to the amendment of the statute, entitles him to damages, and not to compensation under the Employers' Liability Act.

Provosty, J., dissenting. O'Niell, J., dissenting in part.

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Miss Effie Boyer against the Crescent Paper Box Factory, Incorporated. Judgment for plaintiff, and defendant appeals. Affirmed.

Gordon Boswell and L. P. Bryant, Jr., both of New Orleans, for appellant. George Sladovich and Henry J. Rhodes, both of New Orleans, for appellee.

PROVOSTY, J. While plaintiff was in the dressing room of the defendant's factory getting ready to go home after her day's work, her hair got caught in some machinery, and she was scalped. There can be no serious question but that she would be entitled to heavy damages were it not for Act 20, p. 44, of 1914, known as the Employers' Liability Act. She denies that her case comes under this act; and, in the event

that it does, she contends that the act is unconstitutional.

[1] Her reasons for saying that the act does not apply to her case are:

First. That she gave defendant the notice provided for by paragraph 3 of section 3 of said act.

That section provides that the parties to the contracts of employment covered by the act shall be presumed to have intended that their contract should be subject to the provisions of the act, unless otherwise stipulated in the contract, or unless either party gives to the other notice to the contrary, "not less than thirty days prior to the accident."

Plaintiff gave this notice only after the accident, but within 30 days of the date of her employment; and the argument is that she had 30 days within which to give the notice. The act does not so provide. It is explicit to the contrary. By its operation every contract is included, unless taken out either by express stipulation in the contract itself, or by notice 30 days before the accident. Needless to consider what would have been the legal situation if the notice had been given as soon as it was possible to give it, but less than thirty days before the accident.

[2] Second. That defendant refused to furnish her the medical aid required by paragraph 5 of section 8 of the act to be furnished by the employer to the injured employé "during the first two weeks after the injury," and is therefore not in a position to invoke the benefit of the act.

There is no evidence of defendant's having failed to furnish this medical aid. One of the exhibits attached to plaintiff's petition is a letter, alleged to be from defendant's counsel, bearing upon this question of medical aid; but this letter was not offered in evidence, and if, in evidence, would show that defendant complied fully with the medical aid requirement. It is dated December 8, 1915, is addressed to plaintiff's counsel, and reads:

"Dear Sir:

"Re Miss Effie Boyer v. Crescent Paper Box Factory, Inc.

"Crescent Paper Box Factory, Inc., has referred to me for attention your communication of Dec. 2d and 6th, relative to accidental injuries sustained by your client, Nov. 13th, while in its employ.

"As you know, Act No. 20 of 1914 imposes upon my client certain obligations and liabilities from which it cannot escape, and it is our intention to comply to the letter with the requirements of the said act.

"Directly after the accident, and in order to alleviate, as much as possible, the pain and suffering of Miss Boyer, we had her removed from the Charity Hospital to the Touro Infirmary, and placed under the treatment of our own surgeon, Dr. J. Barnett. However, in view of her attitude, as expressed in your communication, we felt that it is not incumbent upon us to incur further expenses in her behalf, and have therefore notified Dr. Barnett and the Touro Infirmary that we will not be responsible for any further expenses in the nature of medical attention, medicine, or hospital fees. As attorney at law and in fact for Miss Boyer we hereby notify you, with the request that immediate arrangements be made for the rendering of further attention at the expense of Miss Boyer.

"Allow me to emphatically deny the statement of Miss Boyer that any one representing her employer has called upon her to annoy her with any proposal to effect an amicable settlement. Such a statement is without foundation in fact.

"If there are any features of the case which you wish to discuss with me kindly advise me and it will afford me pleasure to call upon you.

"Very truly yours."

Defendant appears by this letter to have furnished medical assistance from November 13th to, at least, December 8th—more than two weeks.

[3] Third. That the defendant has not posted a notice in its factory as required by said Act No. 20 of 1914.

The notice here referred to as required to be posted is that provided for by section 12 of the act, reading as follows:

"Sec. 12. Be it further enacted, etc., that it shall be the duty of the employer to cause to have printed and to keep posted at some convenient and conspicuous point about the place of business a notice reading * * * as follows: 'In case of accidental injury or death the injured employé or some one acting in his behalf, must give notice to [here shall follow the name

and address of the party] within fifteen days, and unless notice be given to the above party within fifteen days, no payments will be made under the law for such injury or death.' In the event of the failure of the employer to keep posted said notice, the time in which notice of the injury shall be given as provided in section 11 shall be extended to six months from the date of injury."

Evidently the only function, or effect, of said notice is to start the running of the 15-day delay within which an injured employé must give notice of his injury; and the only consequence of failure to give this notice is that the employé has 6 months, instead of 15 days, within which to give notice of his injury.

Fourth. That the loss of a scalp is not mentioned among the special cases of loss for which provision is made in said act, and that therefore any injury of that kind does not come under the act.

Section 8 of the act provides, in general terms, "for injury producing (a) temporary total disability to do work of any reasonable character; (b) temporary partial disability; (c) permanent partial disability; and (d) permanent total disability." Under the (c) subdivision it provides a schedule of compensation for special cases according to the member or part of the body that has been lost. Because the scalp is not mentioned among the parts of the body thus specially provided for, the contention is made by plaintiff that an injury consisting in the loss of the scalp does not come under the act.

We find no force in this contention. Section 1 of the act provides that this act shall apply to "every person performing services arising out of and incidental to his employment in the course of his employer's trade, business," etc.; and then section 8 provides for temporary total disability to work. Plaintiff's case falls squarely within this classification; she was temporarily disabled totally from doing work of any reasonable character.

Plaintiff calls attention to the fact that by Act No. 243 of 1916, p. 512, the said Act No. 20 of 1914, § 8, was amended so as to make special provision for the case where "the employé is seriously permanently disfigured about the face or head." But we do not see in what way this amendment changes the situation, in so far as the present case is concerned. It merely adds disfigurement to the injuries for which special provision is made for compensation.

Plaintiff's next contention is that the right of action prescribed by said act is not exclusive of a right under the general law of torts. But section 34 of said act is expressly and explicitly to the contrary of this contention.

[4] The next contention is that the said act is null because by it the employé, without his or her consent, is made a party to any contract the employer may enter into with an insurance company to cover the latter's liability in the premises.

The answer is twofold: (1) That the employé is not made a party to such contract, but is merely given a right of action upon it for his additional security; and (2) that the nullity of this provision would not entail the nullity of the entire act, since, by section 41 of the act, it is provided that "if any provision of this act shall be declared unconstitutional or invalid, such unconstitutionality or invalidity shall in no way affect the validity of any other portion thereof which can be given reasonable effect without the provision so declared unconstitutional or invalid."

[5, 6] Next, it is contended that the provision by which every contract of the kind covered by the act is presumed to have been intended to come under the act, unless express provision is made to the contrary in the contract, or notice of a contrary intention is given by the employé to the employer 30 days before the accident, is a prescription

established in the interest of foreign insurance companies, which the Legislature was without authority to adopt.

In the first place, as already stated, the function of the 30-day notice here in question is not to cut off, by prescription or otherwise, a right of action, but is to take the employment contract from under the operation of the said act; and, in the second place, the power of the Legislature to provide that an employé in a factory shall have no right of action for personal injury suffered in the course of his employment, unless he gives the employer notice of the injury within a reasonable time after its occurrence cannot be doubted.

[7] Coming to the question of constitutionality, the grounds of unconstitutionality are not stated with definiteness either in the pleadings or in the briefs. As we understand them, they are that the act is unconstitutional, first, because of the several provisions therein contained relative to the insurance which the employer may take for his protection; (2) because it contains more than one object, and that the several objects which it contains are not expressed in its title; and (3) because it deprives the employé of his life and liberty by taking away from him his right of action under the general law of torts, and confining him to the remedy prescribed by the act.

The first of these objections has already been answered; these provisions relative to insurance take away nothing from the employé; their sole operation in so far as he is concerned is to give him a right of action against the insurance company in which the employer may insure himself against liability under the act, this right of action being additional to that against the employer.

As to plurality of objects and nonexpression in title, we find that the act has but one object; it is an employers' liability act. And we find that everything contained in the act is germane to that object, and that that object is expressed in the title of the act, except perhaps as to that part of section 37 making it a criminal offense to make a false statement or representation, etc. But with said section 37 the plaintiff has no concern; and the nullity of that section would not entail the nullity of the rest of the act.

[8] As to the act being unconstitutional because taking away plaintiff's right of action under the general law of torts, see N. Y. Central R. R. Co. v. Sarah White, 243 U. S. 188, 37 Sup. Ct. 247, 61 L. Ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629, and other Workmen's Compensation Cases, Lawyers' Co-op., where this question is fully discussed, and decided adversely to plaintiff's present contention.

If, as alleged in the answer, and as stated in the letter of defendant's counsel hereinabove transcribed, the defendant company has been willing and ready all along to comply with its obligations under said Act No. 20 of 1914, the plaintiff's suit will have to be dismissed at her cost. The case was not tried as one under said act, as should have been done; hence it will have to be remanded for further trial.

The judgment appealed from is therefore set aside, and the case is remanded to be tried in accordance with the views expressed in this opinion.

MONROE, C. J., dissents. LECHE, J., takes no part.

### On Rehearing.

SOMMERVILLE, J. Further consideration has led to the conclusion that plaintiff's suit in damages must be sustained, and that the case is not controlled by or provided for in the Employers' Liability Act, No. 20 of 1914, p. 44.

Defendant excepted to the action for damages, and denied liability for compensation.

The law guarantees life, liberty, and property to every person, and provides courts wherein one may have adequate remedy for injury done him in his rights, lands, goods, person, and reputation; and it obliges him, through whose fault an injury happens to another, to repair it.

The Employers' Liability Act does not provide for compensation for the injury sustained by plaintiff.

Plaintiff was engaged, with a large number of other hands, in the factory of the defendant company, where she met with the frightful accident which injured and damaged her so disastrously. While in the dressing room of the defendant company, where she had a right to be, her entire scalp was taken from her head by her hair being caught in a revolving belt, which was not shielded. It was negligence on the part of the defendant to have such a belt in operation at that place without safeguarding it. Plaintiff's scalp was taken off more completely and entirely than was customarily done by the savage Indian tribes which, with a scalping knife, scalped their victims, dead or alive, and carried the scalps as trophies, and as evidences of their conquests. She has not, and never will have, a hair on her head. Plaintiff asked for judgment in the sum of $10,000 actual damages, and $2,500 exemplary damages. The trial judge gave judgment for the amount claimed for actual damages, and rejected the claim for exemplary damages. Exemplary damages cannot be allowed.

[9] The Employers' Liability Act, recently adopted in 1914, giving compensation to the injured employé instead of the action for damages which was his exclusive remedy theretofore for personal injuries, is not clear from difficulties in its interpretation. It may have been taken from compensation acts of different states, and that may have led to some confusion in the act. Its terms would import that it was both a compulsory and a voluntary law at the same time. These terms will have to be construed with reference to these two forms of the act, and application will be made in cases presenting these points so as to give all the provisions proper effect.

The act, before it was amended, strictly provided for compensation for personal injuries suffered by the employé while in the performance of services arising out of and incidental to his employment by compensating him for loss of earning power. The act makes the loss of earning power alone the sole basis for compensation.

It may be assumed for the purposes of this case that Effie Boyer is a person described in the Compensation Act, and that the contract she entered into with her employer carried with it the presumed election on her part to work under the provisions of that act; but the act does not provide compensation for the personal injury suffered by her through the fault of the defendant.

Effie Boyer suffered personal injuries in the course of her employment under defendant which has not in any manner destroyed, in whole or in part, her earning power. Her injury is grievous, but it has not deprived her of any of the means of earning wages; and the act as it originally was made no provision for such injury and damage.

[10, 11] Indeed, the Legislature itself has declared in amending Act No. 20 of 1914, § 8, in Act No. 243 of 1916, § 1, p. 514, that there were cases which did not fall "within any of the provisions already made" in the original act. Act No. 20, it may be noted parenthetically, is no longer a purely compensation act. By the amendment just referred to, the act is made to embrace personal injuries which do not affect the earning power of the employé. In section 8, subd. (d), of that act (as amended), it is provided:

"In cases not falling within any of the provisions already made, where the employé is se-

riously permanently disfigured about the face or head or where the usefulness of a member or any physical function is seriously permanently impaired, the court of proper jurisdiction as hereinafter provided may allow such compensation as is reasonable in proportion to the compensation hereinabove specifically provided in the cases of specific disabilities above named, not to exceed fifty per centum of wages during one hundred weeks."

The amendment may include the personal injury to plaintiff, but it was adopted subsequent to the time of the accident, and it is therefore without application here. The injury to Effie Boyer may have caused the adoption of the amendment.

The original act provides compensation for "every injury producing temporary total disability to do work of any reasonable character," for "injuries producing temporary partial disability," and for "every injury producing permanent partial disability," in section 8. We repeat that only those personal injuries resulting in disability "to do work of any reasonable character" are covered by the act. And those disabilities are enumerated, such as the loss of a thumb, finger, arm, etc., which may disable an employé to do work; in other words, those injuries which impair the earning power of the employé.

Effie Boyer may be said to have sustained a personal injury "producing temporary total disability to do work" while she was in the hospital undergoing medical treatment after the accident to her. But she has sustained greater injury than a temporary disability. She has been deprived of her scalp. Such a condition cannot be termed a temporary disability, or a "disease or infection naturally resulting from the injury." She is not "entitled to compensation under this act" for the injury which she has sustained and which she now bears. Her right to damages, or to compensation, is not provided for in the act. The act only restricts the rights and remedies to those employed under the act, where it provides that compensation shall be made for personal injuries which affect the earning power of the employé. Section 34 says:

"That the rights and remedies herein granted to an employé on account of a personal injury for which he is entitled to compensation under this act, shall be exclusive of all other rights and remedies of such employé, his personal representatives, dependents, relations, or otherwise, on account of such injury."

The Compensation Act did not provide for compensation for the injury suffered by plaintiff, and she is not therefore entitled to compensation under that act. Her right to damages is not attempted to be excluded by the act. The rights and remedies given in the act are declared to be for a "personal injury for which he [she] is entitled to compensation under this act."

The claim of plaintiff not being embraced within the terms of or governed by the Employers' Liability Act was properly made under article 2315, C. C.

The judgment appealed from is affirmed.

MONROE, C. J., concurs in the decree.

LECHE, J., concurs in the decree.

PROVOSTY, J., dissents and hands down reasons. See 78 South. 600.

O'NIELL, J., is of the opinion that, unless the decision rendered in the case of Woodruff v. Producers' Oil Co., 142 La. 368, 76 South. 803, holding that the Employers' Liability Act does not apply to an injury that occurred within 30 days after the employment, should be overruled, the question whether the statute excludes an action for damages under article 2315 of the Civil Code, for such an injury as Effie Boyer suffered, should not be considered, because the injury she suffered occurred within 30 days after she was employed. He is of the opinion that the reasons given for the ruling in the case of Woodruff v. Producers' Oil Co. are not tenable; that the ruling cannot be reconciled with that rendered originally in the present case and should be overruled.